**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JANSSEN PRODUCTS, L.P.,          )
and PHARMA MAR, S.A.             )
                                )
            Plaintiffs,          )
                                )
                                )
       v.                        )
                                )     Civil Action No. 24-cv-7319
EVER VALINJECT GMBH, NEXUS       )
PHARMACEUTICALS, LLC,            )
SHANGHAI HAOYUAN                 )
CHEMEXPRESS CO., LTD,            )
MEDCHEMEXPRESS LLC, and          )
RUYUAN HEC PHARM CO., LTD.,      )
                                )
                                )
            Defendants.          )
_____

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Janssen Products, L.P., ("Janssen") and Pharma Mar, S.A. ("Pharma Mar") (collectively, "Plaintiffs"), for their Complaint against Defendants EVER Valinject GmbH ("EVER Valinject"), Nexus Pharmaceuticals, LLC ("Nexus"), Shanghai Haoyuan Chemexpress Co., Ltd. ("Haoyuan Chemexpress"), Medchemexpress LLC ("Medchemexpress"), and Ruyuan HEC Pharm Co., Ltd. ("HEC") (collectively, "EVER" or "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for infringement by Defendants of U.S. Patent No. 8,895,557 (the "'557 Patent") (attached as Exhibit A) arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and for a declaratory judgment of infringement of the '557 Patent and U.S. Patent No. 7,420,051 (the "'051 Patent") (attached as Exhibit B) under 35 U.S.C. §§ 1 et seq., 28 U.S.C. §§ 2201 and 2202.

2.    This action arises out of EVER's submission of New Drug Application No. 219617 (the "EVER NDA" or "NDA No. 219617") under § 505(b)(2) of the Federal Food, Drug and Cosmetic Act ("FDCA"), supported by Drug Master File ("DMF") Nos. 36724 and 36899, to the United States Food and Drug Administration ("FDA") seeking approval to sell EVER's version of Plaintiff's highly successful Yondelis® (trabectedin) 1 mg/vial ("EVER NDA Product") prior to the expiration of the '557 Patent and the '051 Patent (together, the "Patents-in-Suit").

3.    Yondelis® was the first drug in decades to show consistent and meaningful clinical benefit as a second-line treatment option for patients with unresectable and metastatic liposarcomas or leiomyosarcomas after the failure of conventional therapy. Trabectedin, the active ingredient in Yondelis®, is manufactured by the processes claimed in the '051 Patent, which was the first and still only synthetic process that allows manufacture of this active pharmaceutical ingredient ("API") at a commercial scale. The '557 Patent includes claims to the novel formulation for Yondelis®, which is formulated to help reduce the formation of impurities during lyophilization of trabectedin and during storage. Plaintiffs' manufacture of trabectedin using the manufacturing process of the '051 Patent and use of the '557 Patent formulation helps ensure that commercial quantities of Yondelis® with sufficient storage stability are available to meet the needs of the vulnerable population of cancer patients for which it is indicated.

## THE PARTIES

4.    Plaintiff Janssen Products, L.P., is a partnership organized under the laws of the State of New Jersey, having its headquarters and principal place of business at 800/850 Ridgeview Drive, Horsham, PA 19044.

5.    Plaintiff Pharma Mar, S.A. is a Spanish corporation having a principal place of business at Avda. de los Reyes, 1 Pol. Ind. La Mina, 28770, Colmenar Viejo, Madrid, Spain.

6.     On information and belief, Defendant EVER Valinject is a limited liability company organized and existing under the laws of Austria, having a principal place of business at Oberburgau 3, Unterach am Attersee, Oberösterreich, 4866 Austria. On information and belief, EVER Valinject is in the business of, among other things, marketing and selling generic copies of branded pharmaceutical products for the U.S. market. EVER Valinject is the holder of the EVER NDA.

7.     On information and belief, Defendant Nexus is a limited liability company organized and existing under the laws of the state of Illinois, having a principal place of business at 400 Knightsbridge Pkwy., Lincolnshire, IL 60069. On information and belief, Nexus is in the business of, among other things, marketing and selling generic copies of branded pharmaceutical products for the U.S. market. On information and belief, Nexus is the registered U.S. agent for the EVER NDA submission and marketing partner for the proposed EVER NDA Product. On information and belief, Nexus will financially benefit in the event the FDA approves the EVER NDA because Nexus is actively involved in the use, marketing and/or sale of the proposed EVER NDA Product in the U.S., including in the State of Illinois.

8.     On information and belief, Defendant Haoyuan Chemexpress is a corporation organized and existing under the laws of China, having a principal place of business at Room 502, No.2 Building, 720 Cailun Rd., Zhangjiang High Tech Park, Pudong District, Shanghai, P.R. China 201203. On information and belief, Haoyuan Chemexpress is in the business of, among other things, manufacturing generic copies of branded pharmaceutical products for the U.S. market and/or manufacturing APIs and intermediates used to make APIs for generic copies of branded pharmaceutical products for the U.S. market. On information and belief, acts of EVER Valinject and Nexus complained of herein were done with the cooperation, participation, and assistance of Haoyuan Chemexpress. Haoyuan Chemexpress is the holder of DMF No. 36724 for trabectedin,

and DMF No. 36899 which, on information and belief, is directed to an intermediate and/or starting material for the manufacture of trabectedin, including for purposes of manufacturing the proposed EVER NDA Product.

9.    On information and belief, Defendant Medchemexpress is a limited liability company organized and existing under the laws of the state of New Jersey, having a principal place of business at 1 Deerpark Dr. Ste. Q, Monmouth Junction, New Jersey 08852. On information and belief, Medchemexpress is in the business of, among other things, sales of chemical and biochemicals for the development of pharmaceutical products. On information and belief, Medchemexpress is a subsidiary of Haoyuan Chemexpress and the authorized U.S. agent for DMF Nos. 36724 and 36899. On information and belief, Medchemexpress operates in concert with and under the direction of Haoyuan Chemexpress, EVER Valinject and Nexus in, *inter alia*, seeking approval for the EVER NDA, supported by DMF Nos. 36724 and 36899, and the development and manufacture of the trabectedin API manufactured for the proposed EVER NDA Product.

10.    On information and belief, Defendant HEC is a corporation organized and existing under the laws of China, having a principal place of business at Xiaba Development Zone, HEC County, Shaoguan City, Guangdong Province, P.R. China 512721. On information and belief, HEC is in the business of, among other things, developing, manufacturing, selling and distributing API for generic pharmaceutical products. On information and belief, HEC will manufacture the trabectedin API for the proposed EVER NDA Product. On information and belief, HEC operates in concert with and under the direction of Haoyuan Chemexpress, EVER Valinject, Nexus and Medchemexpress in, *inter alia*, the development and manufacture of the trabectedin API for the proposed EVER NDA Product.

11.    On information and belief, Defendants collaborated in the research, development, preparation and submission of the EVER NDA, supporting DMF Nos. 36724 and 36899, and

proposed EVER NDA Product and continue to actively collaborate in seeking approval from FDA for the EVER NDA, supporting DMFs, and the EVER NDA Product for marketing in the U.S., including in the State of Illinois.

12.    On information and belief, Defendants actively collaborate with respect to the development, regulatory approval, commercial manufacture, marketing, sale, offer for sale, and/or distribution of the proposed EVER NDA Product for the U.S. market, including in the State of Illinois.

13.    On information and belief, Defendants rely on material assistance from one another to market, distribute, offer for sale, and/or sell the proposed EVER NDA Product in the U.S. market, including in the State of Illinois. On information and belief, Defendants intend to act collaboratively to commercially manufacture, market, distribute, offer for sale and/or sell the proposed EVER NDA Product, in the event FDA approves the EVER NDA. On information and belief, each of the Defendants will financially benefit in the event the FDA approves the EVER NDA and from the use, marketing and/or sale of the proposed EVER NDA Product in the U.S., including in the State of Illinois.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

### Nexus

15.    This court has personal jurisdiction over Nexus because, *inter alia* and on information and belief, Nexus has purposely availed itself of the benefits and protections of Illinois' laws such that it should reasonably anticipate being hauled into court here.

16.     On information and belief, Nexus is a limited liability company organized and existing under the laws of the State of Illinois. By virtue of its organization in Illinois, this Court has personal jurisdiction over Nexus.

17.     On information and belief, Nexus has had persistent and continuous contacts with this judicial district, including developing and marketing pharmaceutical products that are sold in this judicial district, and selling pharmaceutical products in this judicial district.

18.     As stated in EVER's purported Paragraph IV Letter dated July 3, 2024 ("PIV Letter"), Nexus intends to engage in the commercial manufacture, use, or sale of the proposed EVER NDA Product before the expiration of the Patents-in-Suit in the U.S., including in Illinois, and submitted the EVER NDA on behalf of Defendants from the state of Illinois.[1] The conduct of Nexus will therefore cause injury to Plaintiffs in Illinois.

19.     On information and belief, Nexus derives substantial revenue from selling generic pharmaceutical products throughout the U.S., including in this judicial district.

20.     Nexus has availed itself of the protections and benefits of the jurisdiction of the courts of this judicial district, including as a counterclaim plaintiff in patent infringement actions under the Hatch-Waxman Act. *See Ingenus Pharms., LLC v. Nexus Pharms., Inc.*, No. 1-22-cv-02868, D.I. 15 (N.D. Ill. June 1, 2022); *Melinta Therapeutics, LLC et al v. Nexus Pharms., Inc.*, No. 1-21-cv-02636, D.I. 10 (N.D. Ill. May 14, 2021); *Medicure Int'l, Inc. v. Nexus Pharms., Inc.*, No. 1-19-cv-07979, D.I. 19 (N.D. Ill. Dec. 5, 2019).

21.     Nexus has not contested personal jurisdiction in this judicial district in other actions. *See Ingenus Pharms., LLC v. Nexus Pharms., Inc.*, No. 1-22-cv-02868, D.I. 15 (N.D. Ill.

---

[1] EVER indicated in the PIV Letter that FDA had not issued a Paragraph IV acknowledgment at the time of the PIV Letter.  Plaintiffs have not received any further Paragraph IV Notice Letter to date, and therefore have not received a Paragraph IV Notice Letter following issuance by FDA of a Paragraph IV acknowledgment in accordance with 21 CFR § 314.52(b)(2).

June 1, 2022); *Melinta Therapeutics, LLC et al v. Nexus Pharms., Inc.*, No. 1-21-cv-02636, D.I. 10 (N.D. Ill. May 14, 2021); *Medicure Int'l, Inc. v. Nexus Pharms., Inc.*, No. 1-19-cv-07979, D.I. 19 (N.D. Ill. Dec. 5, 2019).

22.    Venue is proper in this Court for Nexus under 28 U.S.C. § 1400(b) because, *inter alia*, Nexus is a company organized and existing under the law of Illinois, has committed and will commit acts of infringement in this judicial district and has a regular and established place of business at its headquarters in Lincolnshire, Illinois, located within this judicial district.

### *EVER Valinject*

23.    This Court has personal jurisdiction over EVER Valinject because, *inter alia* and on information and belief, EVER Valinject has committed an act of patent infringement under 35 U.S.C. § 271(e)(2) and intends a future course of conduct that includes acts of patent infringement in Illinois. On information and belief, (1) EVER Valinject prepared and submitted the EVER NDA for the purpose of seeking approval to engage in the commercial manufacture, use, sale or offer for sale of the proposed EVER NDA Product in the U.S., including Illinois, (2) in the event of approval of the EVER NDA, EVER Valinject will market, distribute, offer for sale, sell and/or import the proposed EVER NDA Product in the U.S., including Illinois, prior to the expiration of the Patents-in-Suit, and will do so in concert with Nexus, an Illinois corporation. On information and belief, EVER Valinject's activities with respect to the proposed EVER NDA Product will be purposefully directed at Illinois (either directly or indirectly, *e.g.*, through wholesalers, distributors, etc.), and EVER Valinject will derive revenue therefrom.

24.    EVER Valinject has consented to jurisdiction in Illinois for purposes of this action. In its purported PIV Letter, EVER certified that Imron T. Aly, Esq., ArentFox Schiff LLP, 233 South Wacker Dr., Suite 7100, Chicago, IL 60606 "is hereby authorized to accept service of process on behalf of EVER Valinject in connection with its NDA No. 219617, relating to EVER

Valinject's trabectedin 1 mg/vial product." The PIV Letter further states that "EVER Valinject will not object to the personal jurisdiction in the Illinois courts and in particular the Northern District of Illinois."

25.    Alternatively, this Court may exercise personal jurisdiction over EVER Valinject pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Plaintiffs' claims arise under federal law, (b) EVER Valinject is a foreign defendant not subject to personal jurisdiction in the courts of any state, and (c) EVER Valinject has sufficient contacts with the U.S., including but not limited to the submission of the EVER NDA in concert with its U.S. agent, the Illinois corporation Nexus, such that this Court's exercise of jurisdiction over EVER Valinject satisfies due process.

26.    Litigating in the Northern District of Illinois would not burden EVER Valinject unduly. Among other things, EVER Valinject has consented to personal jurisdiction in the Northern District of Illinois. EVER Valinject maintains Nexus, a company residing in this district, as its U.S. agent for the EVER NDA and Nexus will market and distribute the proposed EVER NDA Product by and for EVER Valinject. The U.S. has a substantial interest in adjudicating the dispute and enforcing its patent laws. Plaintiffs have a substantial interest in obtaining convenient and effective relief for violations of their property interests. Moreover, the states have a shared interest in furthering the fundamental substantive policy of the U.S. with respect to its intellectual property laws.

27.    Venue is proper in this district for EVER Valinject pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, EVER Valinject is a company organized and existing under the laws of Austria and may be sued in any judicial district. 28 U.S.C. § 1391(c)(3).

### Haoyuan Chemexpress

28.    This Court has personal jurisdiction over Haoyuan Chemexpress because, *inter alia* and on information and belief, Haoyuan Chemexpress has been and is engaging in activities

directed toward infringement of the Patents-in-Suit by, among other things, preparing and submitting DMF Nos. 36724 and 36899, and acting in concert with Defendants in the preparation and submission of the EVER NDA seeking FDA approval to market the proposed EVER NDA Product throughout the U.S., including in Illinois, before expiration of the Patents-in-Suit.

29.    On information and belief, Haoyuan Chemexpress is engaged in the business of creating, developing, manufacturing and bringing to market generic pharmaceutical products throughout the U.S., including in Illinois. On information and belief, Haoyuan Chemexpress derives substantial revenue from the sale of its products, among other things, throughout the U.S., including in Illinois.

30.    On information and belief, Haoyuan Chemexpress acts in concert with Defendant Nexus, which is incorporated and maintains a principal place of business in Illinois.

31.    On information and belief, Haoyuan Chemexpress and Defendants work in concert with respect to the manufacturing, marketing, sale, and distribution of the proposed EVER NDA Product throughout the U.S., including in Illinois.

32.    On information and belief, Haoyuan Chemexpress knows and intends that the proposed EVER NDA Product will be distributed and sold in Illinois and will thereby displace sales of Yondelis® 1 mg/vial, causing injury to Plaintiffs in Illinois.

33.    Alternatively, this Court may exercise personal jurisdiction over Haoyuan Chemexpress pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Plaintiffs' claims arise under federal law, (b) Haoyuan Chemexpress is a foreign defendant not subject to personal jurisdiction in the courts of any state, and (c) Haoyuan Chemexpress has sufficient contacts with the U.S., including, but not limited to, participating in the preparation and submission of the EVER NDA, preparing and submitting DMF Nos. 36724 and 36899 to FDA and/or manufacturing and/or

selling pharmaceutical products distributed throughout the U.S., including in this judicial district, such that this Court's exercise of jurisdiction over Haoyuan Chemexpress satisfies due process.

34.    Litigating in the Northern District of Illinois would not burden Haoyuan Chemexpress unduly. The U.S. has a substantial interest in adjudicating the dispute and enforcing its patent laws. Plaintiffs have a substantial interest in obtaining convenient and effective relief for violations of its property interests. Moreover, the states have a shared interest in furthering the fundamental substantive policy of the U.S. with respect to its intellectual property laws.

35.    Venue is proper in this district for Haoyuan Chemexpress pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Haoyuan Chemexpress is a corporation organized and existing under the laws of China and may be sued in any judicial district. 28 U.S.C. § 1391(c)(3).

### *Medchemexpress*

36.    This Court has personal jurisdiction over Medchemexpress because, *inter alia* and on information and belief, Medchemexpress has been and is engaging in activities directed toward infringement of the Patents-in-Suit by, among other things, preparing and submitting DMF Nos. 36724 and 36899, and acting in concert with Defendants in the preparation and submission of the EVER NDA seeking FDA approval to market the proposed EVER NDA Product throughout the U.S., including in Illinois, before expiration of the Patents-in-Suit. On information and belief, Medchemexpress has purposely availed itself to the benefits and protections of Illinois laws such that it should reasonably anticipate being hauled into court here.

37.    On information and belief, Medchemexpress is engaged in the business of selling chemicals and biochemicals for the development of pharmaceutical products, including in Illinois. On information and belief, Medchemexpress is a global supplier of such chemicals and biochemicals and has over 1,000 employees.

38.     This Court has personal jurisdiction over Medchemexpress because, *inter alia* and on information and belief, it (1) will benefit from the importation, marketing, sale and/or distribution of the proposed EVER NDA Product to residents of Illinois, (2) is engaged in the business of creating, developing, manufacturing and bringing to market generic pharmaceutical products throughout the U.S., including in Illinois and (3) derives substantial revenue from the sale of its products, among other things, throughout the U.S., including in Illinois.

39.     On information and belief, Medchemexpress has been and is engaging in activities directed toward infringement of the Patents-in-Suit, including by acting in concert with Defendants with respect to the development, regulatory approval, commercial manufacture, marketing, sale, offer for sale and/or distribution of the proposed EVER NDA Product before expiration of the Patents-in-Suit. On information and belief, Medchemexpress acted in concert with the other Defendants in the development, preparation, and submission of the EVER NDA from the state of Illinois, and the development, preparation and submission of supporting DMF Nos. 36724 and 36899. On information and belief, Medchemexpress continues to act in concert with the other Defendants in seeking approval for the EVER NDA and in taking all steps to gain marketing approval from the FDA for the EVER NDA Product for sale in the U.S., including in Illinois. On information and belief, Medchemexpress intends to act in concert with the other Defendants in importing, marketing, selling, distributing and/or using the proposed EVER NDA Product before expiration of the Patents-in-Suit throughout the U.S., including in Illinois. The conduct of Medchemexpress will therefore cause injury to Plaintiffs in Illinois.

40.     On information and belief, Medchemexpress and Haoyuan Chemexpress operate and act in concert as an integrated, unitary business with respect to the manufacturing, marketing,

sale and distribution of generic pharmaceutical products throughout the United States, including in Illinois.

41.    On information and belief, Medchemexpress derives substantial revenue from selling APIs and/or generic pharmaceutical products throughout the U.S., including in Illinois.

42.    Venue is proper in this district for Medchemexpress pursuant to 28 U.S.C. § 1400(b).

### *HEC*

43.    This Court has personal jurisdiction over HEC because, *inter alia* and on information and belief, HEC has been and is engaging in activities directed toward infringement of the Patents-in-Suit by, among other things, acting in concert with Defendants in the preparation and submission of DMF Nos. 36724 and 36899, as well as the EVER NDA seeking FDA approval to market the proposed EVER NDA Product throughout the U.S., including in Illinois. On information and belief, HEC will manufacture the API for the proposed EVER NDA Product in concert with Haoyuan Chemexpress and Medchemexpress.

44.    On information and belief, HEC intends to benefit directly if the EVER NDA is approved by participating in the manufacture, importation, distribution, and/or sale of the EVER NDA Product throughout the U.S., including this judicial district.

45.    Alternatively, this Court may exercise personal jurisdiction over HEC pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Plaintiffs' claims arise under federal law, (b) HEC is a foreign defendant not subject to personal jurisdiction in the courts of any state, and (c) HEC has sufficient contacts with the U.S., including, but not limited to, participating in the preparation and submission of the EVER NDA, of DMF Nos. 36724 and 36899, and/or manufacturing and/or selling pharmaceutical products distributed throughout the U.S., including

in this judicial district, such that this Court's exercise of jurisdiction over HEC satisfies due process.

46.    Litigating in the Northern District of Illinois would not burden HEC unduly. The U.S. has a substantial interest in adjudicating the dispute and enforcing its patent laws. Plaintiffs have a substantial interest in obtaining convenient and effective relief for violations of its property interests. Moreover, the states have a shared interest in furthering the fundamental substantive policy of the U.S. with respect to its intellectual property laws.

47.    Venue is proper in this district for HEC pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, HEC is a corporation organized and existing under the laws of China and may be sued in any judicial district. 28 U.S.C. § 1391(c)(3).

## THE ASSERTED PATENTS

48.    On November 25, 2014, the U.S. Patent and Trademark Office ("PTO") issued the '557 Patent, entitled "Pharmaceutical Formulations of Ecteinascidin Compounds." A true and correct copy of the '557 Patent is attached hereto as Exhibit A.

49.    Pharma Mar holds title to the '557 Patent.

50.    Janssen holds an exclusive license to the '557 Patent.

51.    The '557 Patent expires on January 7, 2028.

52.    The FDA has awarded 6 months of pediatric exclusivity for Yondelis® (trabectedin). The period of pediatric exclusivity applicable to the '557 Patent does not expire until July 7, 2028.

53.    Janssen is the holder of approved New Drug Application ("NDA") No. 207953 for Yondelis®.

54.    Janssen sells Yondelis® in the U.S.

55.    Yondelis® is included in the FDA's list of "Approved Drug Products With Therapeutic Equivalence Evaluations," also known as the "Orange Book." The FDA's "Orange Book" also lists patents associated with approved drugs. The '557 Patent is listed in the "Orange Book" in association with Yondelis®. The claims of the '557 Patent cover Yondelis®.

56.    On September 2, 2008, the PTO issued the '051 Patent, entitled "Synthetic Process for the Manufacture of an Ecteinascidin Compound." A true and correct copy of the '051 Patent is attached hereto as Exhibit B.

57.    Pharma Mar holds title to the '051 Patent.

58.    Janssen holds an exclusive license to the '051 Patent for the commercialization of Yondelis®.

59.    The claims of the '051 Patent protect Yondelis®. Yondelis® is commercially manufactured by the processes claimed in the '051 Patent.

60.    The FDA has awarded a patent term extension for the '051 Patent.

61.    The patent term extension for the '051 Patent expires on January 21, 2026.

62.    On information and belief, Defendants have made and will continue to make substantial and meaningful preparations to import into the U.S. and/or offer to sell, sell and/or use within the U.S. products containing trabectedin (also known as "ecteinascidin 743" or "ET-743"), which are made by processes patented by the '051 Patent prior to its expiration.

63.    On information and belief, Defendants' preparations include, but are not limited to, the development of the proposed EVER NDA Product and the submission of the EVER NDA to FDA with a Paragraph IV certification for the '557 Patent.

64.    On information and belief, Defendants intend to financially benefit from the EVER NDA by selling and distributing the proposed EVER NDA Product upon approval.

65.     On information and belief, Defendants intend to use the processes claimed in the '051 Patent to prepare the API, trabectedin, contained in the proposed EVER NDA Product.

66.     The processes claimed in the '051 Patent are important for the commercial-scale manufacture of trabectedin. Prior art processes for manufacturing trabectedin are not commercially feasible. The inventive processes claimed in the '051 Patent were crucial to being able to make trabectedin available to vulnerable cancer patents. No generic drug manufacturer has been found not to infringe the '051 Patent or to use a prior art process or any other process, despite claims to contrary. *See* Stipulation and Order Regarding Infringement of U.S. Patent No 7,420,051 (Dkt. 104), *Janssen Prods., L.P., et al. v. eVenus Pharms. Laby's Inc., et al.*, 1-20-cv-09369 (D.N.J. June 2, 2021); Stipulation and Order (Dkt. 445), *Janssen Prods., L.P., et al. v. eVenus Pharms. Laby's Inc., et al.*, 1-20-cv-09369 (D.N.J. Dec. 22, 2022).

67.     On information and belief, trabectedin is present in the proposed EVER NDA Product without material change from trabectedin made by use of Plaintiffs' patented processes.

68.     On information and belief, trabectedin resulting from Plaintiffs' patented processes is the API of the proposed EVER NDA Product and therefore essential to the proposed EVER NDA Product.

## EVER'S PURPORTED PARAGRAPH IV LETTER AND REFUSAL TO PROVIDE REQUESTED INFORMATION

69.     On or about July 5, 2024, Plaintiffs received the purported PIV Letter stating that EVER submitted NDA No. 219617 to the FDA under § 505(b)(2) of the FDCA, 21 U.S.C. § 355(b), seeking approval to engage in the commercial manufacture, use, importation, offer for sale and/or sale the proposed EVER NDA Product prior to the expiration of the '557 Patent. EVER

also stated that it intended to engage in the commercial use, importation, offer for sale and/or sale of the EVER NDA Product prior to the expiration of the '051 Patent.

70.    After receiving the purported PIV Letter, Plaintiffs contacted EVER and asked for information documenting the process that has been and will be used to manufacture trabectedin for the proposed EVER NDA Product and the formulation of the EVER NDA Product so that Plaintiffs could evaluate infringement of the '557 Patent and the '051 Patent. Plaintiffs requested the EVER NDA, associated DMFs, executed batch records, representative samples of the EVER NDA Product and API, a manufacturing facility inspection and all agreements relating to the marketing of the proposed EVER NDA product. Despite repeated requests, Defendants have not provided Plaintiffs with the requested information.

71.    Beginning with correspondence on July 12, 2024, outside counsel for Plaintiffs negotiated in good faith with counsel for EVER in an attempt to reach agreement on reasonable terms of confidential access to the EVER NDA, associated DMFs, batch records for the drug product and API, representative samples of finished product and API for exhibit batches provided to FDA, manufacturing facility inspection and all agreements relating to the marketing of the EVER NDA product. Plaintiffs repeated their request on July 16, 19, 22 and 23.  Plaintiffs repeatedly stressed that it was in the best interests of all parties for Plaintiffs to receive information relevant to infringement of both the Orange Book patent and process patent (*i.e.*, the EVER NDA, associated DMFs, batch records for the drug product and API, representative samples of finished product and API and manufacturing facility inspection).

72.    On July 26, 2024, Defendants provided Plaintiffs with certain selected portions of the EVER NDA and selections of DMF No. 36724. Defendants, however, refused to produce the

remaining materials, including batch records showing the process used to manufacture the trabectedin API, any raw analytical data, samples or other information requested by Plaintiffs.

73.    On August 5, 2024, Plaintiffs repeated their request that Defendants produce the complete DMFs, raw analytical data and batch records concerning the manufacture of trabectedin. Defendants again refused to produce these documents, despite the full DMF(s) having already been provided to FDA in support of the EVER NDA.

74.    On August 6, 2025, Plaintiffs' counsel again wrote to counsel for EVER Valinject and Nexus, stating that the assertions in the PIV Letter are not supported by the documents produced and are scientifically implausible. As of the filing of this Complaint, Defendants still have not produced the requested materials, including the complete DMFs, raw analytical data and batch records concerning the manufacture of trabectedin.  Defendants' withholding of this information has impeded Plaintiffs' ability to fully evaluate infringement of the '051 Patent.

75.    The information provided by the documents that Defendants have produced to date, and Defendants' failure to produce the requested API batch records, raw analytical data and complete DMFs, supports Plaintiffs' belief that the process used by Defendants to manufacture trabectedin for the proposed EVER NDA Product is the same as the commercial process invented by Pharma Mar and protected by the '051 Patent. Not only have Defendants failed to produce the requested API batch records, but the documents Defendants produced to date reflect that the method they purport to use to manufacture trabectedin is scientifically implausible for commercial-scale manufacture and unlikely to be used to prepare the API for the proposed EVER NDA Product. For example, *inter alia*, the process Defendants allege to use (1) would not yield trabectedin API that is sufficiently pure and (2) would give rise to multiple known impurities that, on information and belief, Defendants have failed to identify, test, control, or to demonstrate removal of. Defendants have also

failed to produce any other documents prepared in the ordinary course of business reflecting the preparation of trabectedin.

76.     Further, as set forth above, the processes claimed in the '051 Patent are important for the commercial manufacture of trabectedin. Prior art processes are not usable on a commercial scale for the manufacture of trabectedin API. On information and belief, Defendants use the claimed processes of the '051 Patent to manufacture trabectedin for the proposed EVER NDA Product.

77.     Plaintiffs have a good faith belief that the prior art process for manufacture of trabectedin (that Defendants allege they are using) is not commercially feasible. This has been demonstrated by Plaintiffs' own efforts to develop the prior art process for commercial scale manufacture—Plaintiffs were unable to do so and instead developed and patented the methods claimed in the '051 Patent. Indeed, the chemist who developed the prior art process, Nobel Laureate E.J. Corey of Harvard, advised Plaintiff Pharma Mar that the process would not work on a commercial scale and that they should pursue alternative APIs.

78.     Moreover, other groups of generic manufacturers who sought to copy Yondelis® initially engaged in attempts to manufacture trabectedin through the prior art process and/or initially alleged they used the prior art process for the manufacture of trabectedin. Each has stipulated to infringement of the '051 Patent or is enjoined from commercial manufacture of trabectedin until patent expiration.  *See e.g.*, *Janssen Products, L.P., et al. v. eVenus Pharms. Labs. Inc., et al.*, 1-20-cv-09369 (D.N.J.), Dkt. 445; *see also* Dkt. 491 at 24 (Ret. U.S.M.J. Joel Schneider as Special Master finding that "plaintiffs [Janssen and Pharma Mar] had a well-grounded good faith belief that defendants [eVenus-Fresenius-Hengrui] had no intention of using" the prior art process). Natco Pharma Limited, Sun Pharmaceutical Industries Ltd. and Sun Pharmaceutical Industries Inc. stipulated to infringement of the '051 Patent. *Id.* at Dkt. 104.

79.     These facts, coupled with Defendants' failure to produce the full DMFs, manufacturing batch records for the trabectedin API in its proposed EVER NDA Product, and the requested manufacturing inspection, strongly support the conclusion that the commercial process that Defendants will actually use to manufacture trabectedin for the EVER NDA Product is the process that was invented by Pharma Mar and covered by the '051 Patent.  Indeed, the facts, as outlined herein, give rise to a presumption under 35 U.S.C. § 295 that the trabectedin API in the proposed EVER NDA Product is made using the processes claimed in the '051 Patent.

80.     On information and belief, Defendants also have knowledge of the validity of the '051 Patent and that the patent was not found invalid in litigation. Their PIV Letter provides no reason that the claims of the '051 Patent are not valid. Similarly, MSN stipulated to the validity of the claims of the '051 Patent at the outset of litigation. Stipulated Order Regarding Infringement and Validity of U.S. Patent No. 8,895,557 and Validity of U.S. Patent No. 7,420,051 (Dkt. 14), *Janssen Prods., L.P., et al. v. MSN Pharms. Inc., et al.*, 3-21-cv-14622 (D.N.J. Dec. 17, 2021).

81.     On information and belief, Defendants had actual and constructive notice of the '051 Patent prior to the submission of the EVER NDA seeking approval of the EVER NDA Product.

82.     On information and belief, Defendants have made, and continue to make substantial preparations in the United States to offer to sell, sell, use and/or import the EVER NDA Product prior to the expiration of the '051 Patent.

83.     On information and belief, Defendants' actions include, but are not limited to the development of the EVER NDA Product and the filing of the EVER NDA with a Paragraph IV certification.

84.     On information and belief, Defendants continue to seek approval of the EVER NDA from the FDA and intend to collaborate in the manufacture, marketing, and sale of the EVER NDA

Product (including the commercial marketing and sale of such product in the State of Illinois) in the event that the FDA approves the EVER NDA.

## DEFENDANTS' INFRINGEMENT OF THE '557 PATENT

85.    In the EVER PIV Letter, EVER alleged non-infringement of the claimed commercial formulation of the '557 Patent. In particular, EVER alleged that it uses L-arginine instead of a disaccharide as claimed in the '557 Patent. Plaintiffs' Yondelis® uses sucrose, a disaccharide.

86.    Claim 1 of the '557 Patent claims, "[a] lyophilised anti-tumor composition comprising a single active anti-tumor compound and a disaccharide selected from sucrose, lactose and a combination thereof, wherein the anti-tumor compound is ET-743 and wherein the disaccharide is present in a sufficient amount to inhibit conversion of the ET-743 into ET-701, such that the ET-743 composition comprises less than 2% ET-701 after storage of the ET-743 composition at 5° C for 3 months." Defendants do not dispute that the proposed EVER NDA Product meets every claimed limitation other than the disaccharide limitation. Defendants do not contest that their proposed product is "[a] lyophilized anti-tumor composition comprising a single active anti-tumor compound … wherein the anti-tumor compound is ET-743, trabectedin." They also do not contest that their "ET-743 composition comprises less than 2% ET-701 after storage of the ET-743 composition at 5° C for 3 months." They merely argue that they use L-arginine as opposed to the sucrose "to inhibit conversion of the ET-743 into ET-701, such that the ET-743 composition comprises less than 2% ET-701 after storage of the ET-743 composition at 5° C for 3 months." On information and belief, the ingredients in the proposed EVER NDA Product perform substantially the same function, in substantially the same way, with substantially the same results as in the claims of the '557 Patent.

87.    On information and belief, the proposed EVER NDA Product merely substitutes L-arginine for the specified disaccharide of, e.g., claims 1-8, 11-20 and 22-26 of the '557 Patent. For example, both L-arginine and sucrose act to stabilize the trabectedin formulation by limiting conversion of ET-743 to ET-701 such that the composition has less than 2% ET-701 after storage at 5° C or 25° C for 3 months. EVER does not dispute that the proposed EVER NDA Product literally meets each of the other limitations of claims 1-8, 11-20 and 22-26 of the '557 Patent.

88.    On information and belief, Defendants have not informed FDA that there are substantial differences between L-arginine and the disaccharide of claims 1-8, 11-20 and 22-26 of the '557 Patent as relevant to the claims. Instead, Defendants rely on Yondelis® as the reference product for approval of the EVER NDA Product. On information and belief, Defendants' NDA and Defendants' communications with FDA will support that ingredients in the proposed EVER NDA Product perform substantially the same function, in substantially the same way, with substantially the same result as in the claims of the '557 Patent.

89.    On information and belief, Defendants had actual and constructive notice of the '557 Patent prior to the submission of the EVER NDA seeking approval of the EVER NDA Product. Indeed, their PIV Letter reflects cites to and reflects knowledge of the prior Hatch-Waxman litigations involving the '557 Patent and '051 Patent.

90.    On information and belief, as with the '051 Patent, Defendants had knowledge of the validity of the claims of the '557 Patent. eVenus and Hengrui are enjoined from infringing the '557 Patent and have now also withdrawn their ANDA. Fresenius will never market their infringing product and cannot make use of the ANDA or supporting DMFs. MSN stipulated to the validity of the claims of the '557 Patent. *See* Stipulation and Order (Dkt. 445), *Janssen Prods., L.P., et al. v. eVenus Pharms. Lab's Inc., et al.*, 1-20-cv-09369 (D.N.J. Dec. 22, 2022); Stipulated Order

Regarding Infringement and Validity of U.S. Patent No. 8,895,557 and Validity of U.S. Patent No. 7,420,051 (Dkt. 14), *Janssen Prods., L.P., et al. v. MSN Pharms. Inc., et al.*, 3-21-cv-14622 (D.N.J. Dec. 17, 2021).

91.     Plaintiffs commenced this lawsuit within 45 days of the date they received EVER's purported notice of NDA No. 219617 containing a Paragraph IV certification.

## COUNT I

### Infringement Of The '557 Patent Under 35.U.S.C. § 271(e)(2)(A)

92.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-91 hereof, as if fully set forth herein.

93.     Under 35 U.S.C. § 271(e)(2)(A), Defendants have infringed, at least under the doctrine of equivalents, the '557 Patent by submitting NDA No. 219617 with a Paragraph IV certification and seeking FDA approval of NDA No. 219617 to market the proposed EVER NDA Product prior to the expiration of the '557 Patent.

94.     On information and belief, Defendant's commercial manufacture, importation, use, sale and/or offer for sale of the proposed EVER NDA Product prior to the expiration of the '557 Patent would infringe, contribute to the infringement of, and/or induce the infringement of at least claims 1-8, 11-20 and 22-26 of the '557 Patent under the doctrine of equivalents.

95.     Defendants had actual and constructive notice of the '557 Patent prior to filing NDA No. 219617 seeking approval for the proposed EVER NDA Product.

96.     Plaintiffs have no adequate remedy at law to redress the infringement by Defendants.

97.     Plaintiffs will be irreparably harmed if Defendants are not enjoined from infringing or actively inducing or contributing to infringement of the '557 Patent.

## COUNT II

### Declaratory Judgment Of Infringement Of The '557 Patent
### Under 35.U.S.C. §§ 271(a), (b) and/or (c)

98.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-97 hereof, as if fully set forth herein.

99.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants regarding infringement of the '557 Patent.

100.    On information and belief, Defendants have made and will continue to make substantial and meaningful preparations to commercially manufacture, import into the U.S. and/or to offer to sell, sell, and/or use within the U.S. the proposed EVER NDA Product prior to the expiration of the '557 Patent.

101.    The PIV Letter admits that Defendants will engage in the commercial manufacture, use and/or sale of the proposed EVER NDA Product if approved by the FDA.

102.    Defendants' actions, including, but not limited to, the filing of NDA No. 219617 with a Paragraph IV certification and Defendant's systematic attempts to meet the applicable regulatory requirements for approval of NDA No. 219617 indicate a refusal to change their course of action.

103.    Defendants' commercial manufacture, importation, use, sale and/or offer for sale of the proposed EVER NDA Product prior to the expiration of the '557 Patent would infringe, contribute to the infringement of, and/or induce the infringement of at least claims 1-8, 11-20 and 22-26 of the '557 Patent under §§ 271(a), (b) and/or (c) under the doctrine of equivalence.

104.    Plaintiffs should be granted a judicial declaration that the commercial manufacture, importation, use, offer for sale, and/or sale in the U.S. of the proposed EVER NDA Product will constitute infringement of the claims of the '557 Patent under §§ 271(a), (b) and/or (c) under the doctrine of equivalents.

105.    Plaintiffs have no adequate remedy at law to redress infringement by Defendants.

106.    Plaintiffs will be irreparably harmed if Defendants are not enjoined from infringing or actively inducing or contributing to infringement of the '557 Patent.

## COUNT III

## Declaratory Judgment Of Infringement Of The '051 Patent
## Under 35.U.S.C. §271(g)

107.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-106 hereof, as if fully set forth herein.

108.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants regarding infringement of the '051 Patent.

109.    On information and belief, Defendants have made and will continue to make substantial and meaningful preparations to import into the U.S. or offer to sell, sell, and/or use within the U.S. a product which is made by a process patented by the '051 Patent prior to its expiration.

110.    The PIV Letter admits that Defendants will engage in the commercial manufacture, use and/or sale of the proposed EVER NDA Product if approved by the FDA.

111.    Defendants' actions, including, but not limited to, the filing of NDA No. 219617 with a Paragraph IV certification and Defendants' systematic attempts to meet the applicable

regulatory requirements for approval of NDA No. 219617 indicate a refusal to change their course of action.

112.    On information and belief (including EVER's failure to produce requested manufacturing information and the fact that EVER has not provided any scientifically plausible basis to contest infringement of the claims of the '051 Patent, including for at least claims 12-14), Defendant's importation, use, sale, and/or offer for sale of the proposed EVER NDA Product prior to the expiration of the '051 Patent would infringe, contribute to the infringement of, and/or induce the infringement of one or more claims of the '051 Patent under 35 U.S.C. § 271(g).

113.    On information and belief, Defendants had actual and constructive notice of the '051 Patent prior to the filing of NDA No. 219617 seeking approval of the proposed EVER NDA Product.

114.    On information and belief, Defendant's infringement of the '051 Patent would be willful.

115.    Plaintiffs should be granted a judicial declaration that the importation into the U.S. and/or use, offer for sale, and/or sale in the U.S. of the proposed EVER NDA Product will constitute infringement of the claims of the '051 Patent under 35 U.S.C. § 271(g).

116.    Plaintiffs have no adequate remedy at law to redress infringement by Defendants.

117.    Plaintiffs will be irreparably harmed if Defendants are not enjoined from infringing or actively inducing or contributing to infringement of the '051 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

(a)    a judgment that Defendants have infringed the '557 Patent under 35 U.S.C. § 271(e)(2)(A);

(b)      a judgment, pursuant to 35 U.S.C. § 271(e)(4)(A), that the effective date of any FDA approval of EVER's NDA No. 219617 under § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the '557 Patent, including any additional exclusivity period applicable to the patent;

(c)      a judgment declaring that the making, using, selling, offering to sell, or importing of the trabectedin 1 mg/vial described in EVER's NDA No. 219617 would constitute infringement of the '557 Patent, or inducing or contributing to such conduct, by Defendants pursuant to 35 U.S.C. § 271(a), (b) and/or (c);

(d)      a judgment permanently enjoining Defendants and each of their officers, agents, servants and employees, and those persons in active concert or participation with them, from commercially manufacturing, selling or offering for sale, using, or importing the trabectedin 1 mg/vial described in EVER's NDA No. 219617, or any colorable variations thereof, until the day after the expiration of the '557 Patent, including any additional exclusivity period applicable to the '557 Patent, and from otherwise infringing one or more claims of the '557 Patent;

(e)      a judgment declaring that importing, selling, offering to sell, or using the trabectedin 1 mg/vial described in EVER's NDA No. 219617 would constitute infringement of the '051 Patent, or inducing or contributing to such conduct, by Defendants pursuant to 35 U.S.C. § 271(g);

(f)      a declaration that Defendants would willfully infringe the '051 Patent;

(g)      a judgment permanently enjoining Defendants and each of their officers, agents, servants and employees, and those persons in active concert or participation with them, from commercially importing, selling, offering for sale, or using the trabectedin 1 mg/vial described in EVER's NDA No. 219617, or any trabectedin product that is made by any colorable variation of the

processes used to make the proposed EVER NDA Product, until after the expiration of the '051 Patent, including any additional exclusivity period applicable to the '051 Patent, and from otherwise infringing one or more claims of the '051 Patent;

       (h)    a declaration that this case is exceptional;

       (i)    an award of Plaintiffs' costs, expenses, reasonable attorneys' fees, and such other relief as the Court deems just and proper pursuant to 35 U.S.C. § 271(e)(4) and 35 U.S.C. § 285; and

       (j)    such other and further relief as the Court may deem just and proper.

Dated:  August 15, 2024

Irena Royzman
Christine Willgoos
Kaitlyn Rodnick
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 W. 52nd St.
New York, NY 10019
Tel: (202) 506-3518
iroyzman@orrick.com
cwillgoos@orrick.com
krodnick@orrick.com


Alyssa Caridis
ORRICK, HERRINGTON &
SUTCLIFFE LLP
355 S. Grand Ave., Ste. 2700
Los Angeles, CA 90071
Tel: (213) 612-2372
acaridis@orrick.com

Daniel Williams
Jonathan Liu
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Tel: (415) 773-5743
daniel.williams@orrick.com
jonathanliu@orrick.com

*s/ Timothy J. Carroll*
Timothy J. Carroll
Member of N.D. Ill. Trial Bar
Illinois State Bar No. 6269515
Thomas A. James
Illinois State Bar No. 6331587
ORRICK, HERRINGTON &
SUTCLIFFE LLP
353 N. Clark St., Ste. 3600
Chicago, IL 60654
Tel: (312) 924-9891
tim.carroll@orrick.com
tjames@orrick.com

*Attorneys for Plaintiffs Janssen Products, L.P.
and Pharma Mar, S.A.*